# Exhibit 1

eCourts Civil Case Jacket

Judiciary eCourts Public Access System - Civil Part

- Home
- Help
- Logout

**CASE JACKET**
User:publicaccess
Docket Number:  HUD L 001062 - 20

Back                                   Create Summary Report

Case Caption: Collins Jabbar Vs Bob'S Discount Furni Ture

| | | |
|---|---|---|
| Court: Civil Part | Venue: Hudson | Case Initiation Date: 03/10/2020 |
| Case Type: Tort-Other | Case Status: Active | Jury Demand: 6 Jurors |
| Case Track: 2 | Judge: Kimberly Espinales-Maloney | Team: 2 |
| # of Discovery Days: 300 | Age of Case: 00 YR 00 MO | Consolidated Case: N |
| Original Discovery End Date: | Current Discovery End Date: | # of DED Extensions: 0 |
| Original Arbitration Date: | Current Arbitration Date: | # of Arb Adjournments: 0 |
| Original Trial Date: | Current Trial Date: | # of Trial Date Adjournments: 0 |
| Disposition Date: | Case Disposition: Open | Statewide Lien: |

| Plaintiffs (1) | Defendants (2) | ACMS Documents (1) | Fees (1) |

Jabbar Collins

**Case Actions**

| Filed Date | Filings | Docket Text | Transaction ID | Entry Date |
|---|---|---|---|---|
| 03/10/2020 | | Complaint with Jury Demand for HUD-L-001062-20 submitted by Jabbar Collins , on behalf of JABBAR COLLINS against BOB'S DISCOUNT FURNITURE, BOB'S DISCOUNT FURNITURE LLC | LCV2020509734 | 03/12/2020 |
| 03/12/2020 | | **DEFICIENCY NOTICE**: re: Complaint [LCV2020509734] -Page 1 missing | LCV202051004 | 03/12/2020 |
| 03/12/2020 | | Deficiency Correction uploaded by Case Management Staff submitted by JABBAR COLLINS | LCV2020510094 | 03/12/2020 |
| 03/13/2020 | | TRACK ASSIGNMENT Notice submitted by Case Management | LCV2020519796 | 03/13/2020 |

Showing 1 to 4 of 4 entries

Screen ID : ECCV3001
© Copyright NJ Judiciary 2016

BUILD: CivilCaseJacket_2019.6.0.7

## SUMMONS

Attorney(s)  Jabbar Collins, In Person

Office Address  347 Fifth Avenue, Suite 1402

Town, State, Zip Code  New York, New York 10016

Telephone Number  203-823-8800

Attorney(s) for Plaintiff  Jabbar Collins

### Superior Court of
### New Jersey

Hudson   ▼ County

Law   Division

Docket No:  HUD-L-1062/20

JABBAR COLLINS
    Plaintiff(s)

vs.

BOB'S DISCOUNT FURNITURE,

SECAUCUS; BOB'S DIS. FURN., LLC
    Defendant(s)

### CIVIL ACTION
### SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.

/s/ Michelle M. Smith

Clerk of the Superior Court

DATED:  03/13/2020

Name of Defendant to Be Served:  BOB'S DISCOUNT FURNITURE, SECAUCUS, NEW JERSEY

Address of Defendant to Be Served:  3 Mill Creek Drive, Secaucus, New Jersey 07094

Revised 11/17/2014, CN 10792-English (Appendix XII-A)

# Civil Case Information Statement
## (CIS)

Use for initial Law Division
Civil Part pleadings (not motions) under *Rule* 4:5-1
**Pleading will be rejected for filing, under *Rule* 1:5-6(c),
if information above the black bar is not completed
or attorney's signature is not affixed**

| For Use by Clerk's Office Only |
|---|
| Payment type: ☐ ck ☐ cg ☐ ca |
| Chg/Ck Number: |
| Amount: |
| Overpayment: |
| Batch Number: |

| Attorney/Pro Se Name | Telephone Number | County of Venue |
|---|---|---|
| Jabbar Collins | (203) 823-8800 | Hudson |

| Firm Name (if applicable) | Docket Number (when available) |
|---|---|
| N/A | L- 1062-20 |

| Office Address | Document Type |
|---|---|
| 347 Fifth Avenue, Suite 1402, New York, New York 10016 | Civil Complaint |
| | Jury Demand   ■ Yes   ☐ No |

| Name of Party (e.g., John Doe, Plaintiff) | Caption |
|---|---|
| JABBAR COLLINS, Plaintiff | BOB'S DISCOUNT FURNITURE, SECAUCUS, and BOB's DISCOUNT FURNITURE, LLC, Defendants. |

| Case Type Number (See reverse side for listing) | Are sexual abuse claims alleged? | Is this a professional malpractice case?   ☐ Yes   ■ No |
|---|---|---|
| 699 | ☐ Yes   ■ No | If you have checked "Yes," see *N.J.S.A.* 2A:53A-27 and applicable case law regarding your obligation to file an affidavit of merit. |

| Related Cases Pending? | If "Yes," list docket numbers |
|---|---|
| ☐ Yes   ■ No | N/A |

| Do you anticipate adding any parties (arising out of same transaction or occurrence)? | Name of defendant's primary insurance company (if known) |
|---|---|
| ☐ Yes   ■ No | ☐ None   ■ Unknown |

**The Information Provided on This Form Cannot be Introduced into Evidence.**

Case Characteristics for Purposes of Determining if Case is Appropriate for Mediation

| Do parties have a current, past or recurrent relationship? | If "Yes," is that relationship: |
|---|---|
| ☐ Yes   ■ No | ☐ Employer/Employee   ☐ Friend/Neighbor   ☐ Other (explain) |
| | ☐ Familial   ☐ Business |

| Does the statute governing this case provide for payment of fees by the losing party? | ■ Yes   ☐ No |
|---|---|

Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition

One of the issues in this case may be the viability of a purported arbitration provision in BOB's sales contract, a provision that, under settled New Jersey and federal law, is incapable of mandating arbitration of Plaintiff's claims.

CUSTOMER SERVICE T...

MAR 11 2020

SUPERIOR COURT OF NEW JERS...
COUNTY OF HUDSON
CIVIL DIVISION ...

| Do you or your client need any disability accommodations? | If yes, please identify the requested accommodation: |
|---|---|
| ☐ Yes   ■ No | |
| Will an interpreter be needed? | If yes, for what language? |
| ☐ Yes   ■ No | |

**I certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).**

Attorney Signature:

Revised Form Promulgated by 01/31/2020 Notice to the Bar, CN 10517_ps



Side 2

# Civil Case Information Statement
## (CIS)
Use for initial pleadings (not motions) under *Rule 4:5-1*

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

## Track I - 150 days discovery

| | |
|---|---|
| 151 Name Change | 506 PIP Coverage |
| 175 Forfeiture | 510 UM or UIM Claim (coverage issues only) |
| 302 Tenancy | 511 Action on Negotiable Instrument |
| 399 Real Property (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction) | 512 Lemon Law |
| | 801 Summary Action |
| 502 Book Account (debt collection matters only) | 802 Open Public Records Act (summary action) |
| 505 Other Insurance Claim (including declaratory judgment actions) | 999 Other (briefly describe nature of action) |

## Track II - 300 days discovery

| | |
|---|---|
| 305 Construction | 603Y Auto Negligence – Personal Injury (verbal threshold) |
| 509 Employment (other than Conscientious Employees Protection Act (CEPA) or Law Against Discrimination (LAD)) | 605 Personal Injury |
| | 610 Auto Negligence – Property Damage |
| 599 Contract/Commercial Transaction | 621 UM or UIM Claim (includes bodily injury) |
| 603N Auto Negligence – Personal Injury (non-verbal threshold) | 699 Tort -- Other |

## Track III - 450 days discovery

| | |
|---|---|
| 005 Civil Rights | 608 Toxic Tort |
| 301 Condemnation | 609 Defamation |
| 602 Assault and Battery | 616 Whistleblower / Conscientious Employee Protection Act (CEPA) Cases |
| 604 Medical Malpractice | |
| 606 Product Liability | 617 Inverse Condemnation |
| 607 Professional Malpractice | 618 Law Against Discrimination (LAD) Cases |

## Track IV - Active Case Management by Individual Judge / 450 days discovery

| | |
|---|---|
| 156 Environmental/Environmental Coverage Litigation | 514 Insurance Fraud |
| 303 Mt. Laurel | 620 False Claims Act |
| 508 Complex Commercial | 701 Actions in Lieu of Prerogative Writs |
| 513 Complex Construction | |

## Multicounty Litigation (Track IV)

| | |
|---|---|
| 271 Accutane/Isotretinoin | 601 Asbestos |
| 274 Risperdal/Seroquel/Zyprexa | 623 Propecia |
| 281 Bristol-Myers Squibb Environmental | 624 Stryker LFIT CoCr V40 Femoral Heads |
| 282 Fosamax | 625 Firefighter Hearing Loss Litigation |
| 285 Stryker Trident Hip Implants | 626 Abilify |
| 286 Levaquin | 627 Physiomesh Flexible Composite Mesh |
| 289 Reglan | 628 Taxotere/Docetaxel |
| 291 Pelvic Mesh/Gynecare | 629 Zostavax |
| 292 Pelvic Mesh/Bard | 630 Proceed Mesh/Patch |
| 293 DePuy ASR Hip Implant Litigation | 631 Proton-Pump Inhibitors |
| 295 AlloDerm Regenerative Tissue Matrix | 632 HealthPlus Surgery Center |
| 296 Stryker Rejuvenate/ABG II Modular Hip Stem Components | 633 Prolene Hernia System Mesh |
| 297 Mirena Contraceptive Device | |
| 299 Olmesartan Medoxomil Medications/Benicar | |
| 300 Talc-Based Body Powders | |

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1,
in the space under "Case Characteristics.

Please check off each applicable category ☐ Putative Class Action    ☐ Title 59    ■ Consumer Fraud

RECEIVED #11

MAR 1 0 2020

SUPERIOR COURT OF N.J.
FEE OFFICE
COUNTY OF HUDSON

BATCH # 37
RECEIVED DATE 3|10|2020
CA / CK / MO / CG
CK/CG ACCT. # 1473
AMOUNT $250.00
PAYOR: Jabbar Collins

Jabbar Collins
*Plaintiff*
347 Fifth Avenue
Suite 1402
New York, New York 10016
Tele: (203) 823-8800
Fax: (646) 786-3249
Email: horizonresearchservices@gmail.com
—————————————————————X

F I L E D

CUSTOMER SERVICE

MAR 1 0 2020

SUPERIOR COURT OF NEW JERSEY
COUNTY OF HUDSON
CIVIL DIVISION #5

| | | |
|---|---|---|
| JABBAR COLLINS, | : | **SUPERIOR COURT OF NEW JERSEY** |
| | : | **CIVIL PART - LAW DIVISION** |
| Plaintiff, | : | **HUDSON COUNTY** |
| | : | |
| -against- | : | |
| | : | (Civil Action - Jury Trial Demanded) |
| BOB'S DISCOUNT FURNITURE, | : | |
| SECAUCUS, NEW JERSEY; BOB'S | : | Docket No. L - 1062-20 |
| DISCOUNT FURNITURE, LLC, ᴡᴹ | : | |
| MANCHESTER, CONNETICUT, | : | |
| | : | |
| | : | **COMPLAINT** |
| | : | |
| Defendants. | : | |
| | : | |

—————————————————————X

PLAINTIFF JABBAR COLLINS, respectfully alleges, upon information and belief:

## **INTRODUCTION**

1.    This civil action seeks to hold defendants BOB'S DISCOUNT

FURNITURE and its parent entity BOB'S DISCOUNT FURNITURE, LLC. jointly and

severally liable, for its New Jersey Consumer Law and common law fraud, breach of

contract, negligence, and other wrongs, resulting in damage to PLAINTIFF.

1

2.      Despite the friendly animated public image of BOB's, for a significant time preceding this complaint BOB's would as a matter of practice falsely represent to customers that their furniture would be delivered on a specific date within a specific window period, knowing full well that the inept and negligent delivery men it used disregarded these appointments as a matter of course, and unilaterally canceled agreed upon deliveries if the customer did not accommodate the delivery teams' sudden change in schedule.

3.      Thus, for example, a customer and BOB's might agree that a delivery would take place between 12:00 pm and 3:00 pm, but the delivery team would then telephone the customer at 10:30 am stating that they would be making the delivery in 20 minutes. If the customer could not accommodate the delivery team's unilaterally revised delivery schedule, the delivery team falsely claimed they were unable to complete the delivery, failed to make the delivery in accordance with the terms the customer and BOB's agreed upon, and forced the customer to reschedule the delivery for a different date.

4.      BOB's practices wreaked havoc upon customers —many of whom were single moms, grandmothers, self-employed individuals, and others living on a budget—who incurred costs and lost income they would have otherwise made from their employment had they not been deceived by BOB's misrepresentations and fraud.

5.      Despite numerous complaints BOB's received regarding their delivery team's practices, BOB's continued to employ such drivers, did nothing to remedy their

2

practices, and continued to falsely represent to customers making purchasing that the furniture they purchased would be delivered on a specific date and time, never informing the customers that the deliveries would be canceled if the customer did not accommodate the delivery team's unilateral change of the time for delivery.

6.    BOB's business model, utilizing these unscrupulous delivery teams, shifted costs to unknowing customers.  BOB's employed deficient delivery people at rock bottom prices which saved BOB's money and increased its profit, but at a cost of customers' loss of substantial time, money, and missed work, and other damages.

7.    This was the case with PLAINTIFF.  PLAINTIFF, a highly skilled Legal Analyst who runs his own research firm, lost thousands of dollars in hourly fees and other income he would have earned but for BOB's fraud.

8.    BOB's, on two occasions, after assuring PLAINTIFF that the furniture would be delivered on a specific date and time, unilaterally changed the delivery time to several hours earlier, and when PLAINTIFF could not accommodate the new delivery schedule, breached the contract and falsely claimed the delivery could not be completed. On yet another occasion BOB's unilaterally canceled the delivery, for no legitimate reason, never informing PLAINTIFF that it was doing so until hours after the scheduled delivery time.

9.    BOB's actions, and those of individuals it is legally responsible for, render BOB's liable for damages suffered by PLAINTIFF.

3

10.    Moreover, BOB's attempts to silence any challenge to its practices by including in its sales contract a provision purportedly requiring arbitration fails because, under settled New Jersey and federal law, the provision is deficient and contains substantive flaws rendering it legally incapable of barring lawsuits such as this one. *See e.g.* ¶¶ 107-135, *infra*.

11.    Finally, while PLAINTIFF currently brings this action individually, in light of BOB's wide-spread practices, he reserves the right to move to amend this complaint and to seek other relief.

## JURISDICTION AND VENUE

12.    This action arose in Hudson County, New Jersey and seeks damages in excess of $15,000. Defendant BOB's DISCOUNT FURNITURE, SECAUCUS and BOB's DISCOUNT FURNITURE, LLC., are corporate entities and businesses, one of which has its principal place of business here. Both conduct business in this county, and the material acts and omission that predicate this lawsuit took place in Hudson County.

## PARTIES

13.    PLAINTIFF is Jabbar Collins, 347 Fifth Avenue, Suite 1402, New York, New York 10016.

14.    Defendant BOB's DISCOUNT FURNITURE, SECAUCUS has offices at 3 Mill Creek Drive, Secaucus, New Jersey 07094.

4

15.    Defendant BOB's DISCOUNT FURNITURE, LLC. is the parent entity of BOB's DISCOUNT FURNITURE, SECAUCUS.  BOB's DISCOUNT FURNITURE, LLC has offices at 434 Tolland Turnpike, Manchester, Connecticut 06042.

16.    Throughout this complaint, both BOB's DISCOUNT FURNITURE and BOB's DISCOUNT FURNITURE, LLC and the employees they use to deliver furniture, are referred to collectively and interchangeably as "BOB's" and/or "BOB's delivery team."  None of those parties were independent contractors or individuals for whom BOB's is not liable.

## THE RELEVANT FACTS

### A.    BOB's First Breech

17.    On or about February 20, 2020, PLAINTIFF purchased nearly $3,000 worth of furniture from BOB's in Secaucus, New Jersey to be delivered to a nearby location in New Jersey.

18.    The furniture consisted of a dining room and living room set.

19.    BOB's promised PLAINTIFF that the furniture would be delivered on February 24, 2020, and based explicitly on that promise, PLAINTIFF agreed to pay BOB's nearly $3,000 for the furniture.

20.    PLAINTIFF's and BOB's agreement was memorialized in part in a written contract.

21.     BOB's promised that two days before the delivery, BOB's would contact PLAINTIFF and provide a three hour window period when the delivery would be made on February 24, 2020.

22.     On or about February 22, 2020, BOB's contacted PLAINTIFF and promised that the furniture would be delivered between 3:00 pm and 6:00 pm, on February 24, 2020.

23.     PLAINTIFF relied on all of BOB's representations, and canceled billable work he had scheduled in order to be present at the delivery address to accept delivery of the furniture.

24.     Despite the 3:00 pm and 6:00 pm delivery time, on February 24, 2020, at approximately 1:05 pm PLAINTIFF received a telephone call from BOB's delivery team informing PLAINTIFF that they would be delivering the furniture by 1:45 pm.

25.     PLAINTIFF objected, informing BOB's delivery team that the delivery was scheduled for between 3:00 pm and 6:00 pm, and that he was in a meeting and could not be  at the delivery location by 1:45 pm.

26.     PLAINTIFF informed BOB's delivery team, however,  that he would try to accommodate them and make it to the delivery location by 2:00 pm.

27.     PLAINTIFF immediately called BOB's customer care to complain, and said that he had made it to the delivery location around 1:45 pm., and that the delivery team had yet to arrive.

28.    BOB's informed PLAINTIFF that the delivery team was still going to make the delivery between the designated 3:00 pm and 6:00 pm. window period.

29.     By 5:15 pm  the delivery had not arrived.

30.    PLAINTIFF contacted BOB's who informed him that the delivery team was still on their way.

31.    At approximately 5:45 pm PLAINTIFF contacted BOB's again.  This time, BOB's informed PLAINTIFF that the delivery could not be made that day and that PLAINTIFF would have to reschedule the delivery for a different date.

32.    In truth, this was false.  The delivery team could indeed have made the delivery on the that day but it unilaterally refused to do so simply because PLAINTIFF failed to accommodate their unilateral revision of the delivery time.

33.    Throughout PLAINTIFF's interactions with BOB's, BOB's continually reassured PLAINTIFF that the furniture would be delivered on February 24, 2020, within the designated window period, or at worst, a little later that same day.

34.    At no time did PLAINTIFF ever agree to allowing BOB's to unilaterally reschedule the delivery to an earlier time or a totally different date because he could not accommodate BOB's unilateral change in the delivery time.

35.    As a result of BOB's breach of contract, PLAINTIFF was damaged by loss of fees he would have earned, time and expense, and other damages set forth in ¶ 74, *infra*.

**B.    BOB's Second Breech**

36.    On or about February 28, 2020, PLAINTIFF purchased nearly $1,200,

worth of furniture from BOB's in Secaucus, New Jersey

37.    The furniture consisted of a bedroom set.

38.    BOB's promised PLAINTIFF that the furniture, along with a server that

was undelivered because it was damaged during a previous delivery attempt, would be

delivered on March 4, 2020, and based explicitly on that promise, PLAINTIFF agreed to

pay BOB's the nearly $1,200 for the furniture.

39.    PLAINTIFF's and BOB's agreement was memorialized in part in a written

contract.

40.    BOB's promised PLAINTIFF that the furniture would be delivered on

March 4, 2020, and that two days before the scheduled delivery date, BOB's would call

PLAINTIFF to provide a three hour window period when the delivery would be made.

41.    BOB's promised that two days before the delivery, BOB's would contact

PLAINTIFF and provide a three hour window period when the delivery would be made

on March 4, 2020.

42.    On or about March 2, 2020, BOB's contacted PLAINTIFF and promised

that the furniture would be delivered between 1:00 pm and 3:00 pm, on February 24,

2020.

43.    PLAINTIFF relied on all of BOB's representations and canceled billable work he had scheduled in order to be present at the delivery address to accept delivery of the furniture.

44.    Despite the 1:00 pm and 3:00 pm delivery time, on March 4, 2020, at approximately 11:34 am PLAINTIFF received a telephone call from BOB's delivery team informing PLAINTIFF that they would be delivering the furniture by 11:55 am.

45.    PLAINTIFF objected, informing BOB's delivery team that the delivery was scheduled for between 1:00 pm and 3:00 pm, and that he could not be at the delivery location by 10:55 am.

46.    PLAINTIFF informed BOB's delivery team that he could  not accommodate their unilateral change in the delivery time and that he would be at the delivery location at the scheduled delivery time, 1:00 pm to 3:00 pm.

47.    PLAINTIFF immediately called BOB's customer care to complain, and BOB's informed PLAINTIFF that BOB's delivery team was still going to make the delivery in the designated 1:00 pm and 3:00 pm. window period.

48.     By 2:30 pm  the delivery had not arrived.

49.    PLAINTIFF contacted BOB's who informed him that the delivery team was still on their way.

50.    At approximately 3:30 pm BOB's called PLAINTIFF and informed PLAINTIFF that the delivery could not be made that day and that PLAINTIFF would have to reschedule the delivery for a different date.

51.    In truth, this was false.  The delivery team could indeed have made the delivery that day but they unilaterally refused to do so simply because PLAINTIFF failed to accommodate their unilateral revision of the delivery time.

52.    Throughout PLAINTIFF's interactions with BOB's, BOB's continually reassured PLAINTIFF that the furniture would be delivered on February 24, 2020, within the designated window period, or at worst, a little later that same day.

53.    At no time did PLAINTIFF ever agree to allowing BOB's to unilaterally reschedule the delivery to an *earlier time* or a totally different date because he could not accommodate BOB's unilateral change in the delivery time.

54.    As a result of BOB's breech of contract, PLAINTIFF was damaged by loss of fees he would have earned, time and expense, and other damages set forth in ¶ 74, *infra*.

C.    **BOB's Third Breech**

55.    On or about March 4, 2020, BOB's promised PLAINTIFF that it would deliver the merchandise  (the bedroom set and server) it failed deliver that day.

56.    BOB's promised PLAINTIFF that the furniture would be delivered on March 9, 2020, and based explicitly on that promise, PLAINTIFF agreed to continue to do business with BOB's and not demand a refund of his purchase.

57.    On or about March 7, 2020, BOB's contacted PLAINTIFF and promised him that the furniture would be delivered between 10:15 am and 1:15 pm, on March 9, 2020.

58.    PLAINTIFF relied on all of BOB's representations, and canceled billable work he had scheduled in order to be present at the delivery address to accept delivery of the furniture.

59.    Despite the 10:15 am to 1:15 pm delivery time, on March 9, 2020, BOB's failed to deliver the furniture.

60.    PLAINTIFF subsequently called BOB's which was unable to explain to PLAINTIFF the reason for the breech, and BOB's informed PLAINTIFF that BOB's could not even contact the delivery team.  BOB's refused to connect PLAINTIFF to the delivery team and said it could not guarantee his furniture would be delivered that day.

61.    As of the time of this Complaint, BOB's has yet to reschedule delivery.

62.    The delivery team could have made the delivery on March 9, 2020, but unilaterally chose not to do so.

63.    Throughout PLAINTIFF's interactions with BOB's, BOB's continually reassured PLAINTIFF that the furniture would be delivered on February 24, 2020, within the designated window period, or at worst, a little later that same day.

64.    At no time did PLAINTIFF ever agree to allowing BOB's to unilaterally reschedule the delivery to an *earlier time* or a totally different date because he could not accommodate BOB's unilateral change in the delivery time.

65.    As a result of BOB's breech of contract, PLAINTIFF was damaged by loss of fees he would have earned, time and expense, and other damages set forth in ¶ 74, *infra*.

11

D.    **BOB's Corporate Management Had Full Knowledge Of Its
Deceptive Delivery Practices And Perpetuated Them Because
They Kept BOB's Expenses Low And Increased Their Profit**

66.    BOB's breech of its contract with PLAINTIFF was not an isolated incident. To the contrary, as matter of practice BOB's regularly lied to customers that their furniture would be delivered on a specific date within a specific window period, knowing full well that the inept and negligent delivery men it used disregarded these appointments as a matter of course, unilaterally canceled agreed upon deliveries if the customer did not accommodate the delivery teams sudden change in schedule, or simply failed to make delivery of the furniture.

67.    In fact, in just a three-year period, the Better Business Bureau received nearly 3,200 complaints regarding BOB's business practices. *See* Better Business Bureau's ("BBB") website (https://www.bbb.org/us/ct/manchester/profile/furniture-stores/bobs-discount-furniture-llc-0111-19000014/complaints#368262032) (last visited March 9, 2020).

68.    More importantly, BOB's corporate representative responded online to many of these complaints, acknowledged and apologized for the issue, but did nothing to remedy the practice or problem or change their delivery practices.

69.    A stunning number of those complaints, all of which preceded BOB's deception of PLAINTIFF and PLAINTIFF"s injuries, pertained to BOB's delivery practices. The victimized customers' experiences with BOB's essentially mirror what happened to PLAINTIFF.

12

70.     For example, on January 30, 2020, one customer complained:

[R]egarding the delivery service of my bed-frame platform on
1/23/2030 and today's service, 1/28/2020, for assembly. Last
week, when my bed-frame was delivered on Thursday,
1/23/2020, the technician just left the huge, heavy box laying
in my front walkway without making contact with me; I was
not aware it was sitting outside until I walked outside and
noticed it and I had to ask a neighbor to help me carry it
inside my home. On Friday, 1/24/2020, I called Customer
Care to inquire about assembly and the representative was
kind enough to schedule for a technician to come out
Tuesday, 1/28/2020. I received the time frame window of
11:30 am – 2:30 pm the night before. The day of the delivery
at 12:10 pm I received a text message stating the technician
would be arriving in 10 minutes. At 12:14 pm, again, I
received the same text message stating the technician would
be arriving in 10 minutes. At 12:25 pm the truck arrived,
parked in front of my house, one of the technicians got off,
walked over to my fence, stood in front of my house, on the
curb, walked back to his truck and left without saying or
doing anything. I immediately checked the service/delivery
tracker and noticed that the technician wrote "Unable to
Start" on my status for service so I called Customer Care, the
representative informed me that she would have the driver
return, said the technician would be calling me shortly with
an estimated time of arrival and to please wait for his phone
call. At 3:00 pm I called Customer Care, again, to inform
them that I was still waiting and that the technician never
called me with an estimated time for his return and that I
needed to leave, however, I would be back at 4:30 pm. The
representative informed me she would make a note for the
technician to return at 4:30 pm. I also informed the
representative that I needed to file a complaint on "Manual
G", that's the delivery team noted on my invoice, for the
terrible delivery service, the representative informed me she
would file a complaint on the technician team, on my behalf,
and again I was told that the technician would call me with an
estimated time of arrival. At 5:30 pm, still no technician had
arrived nor had I received any phone call with updates or an

13

estimated time of arrival. I called Customer Care, again, a fourth time, and asked to speak to a supervisor. While I was on hold, for 25 minutes, the phone call was dropped. I called back a fifth time and asked to speak to a supervisor only. I was transferred to Campenela who informed me that they had been trying to get an estimated time from the technician, however, they weren't getting any response. While on the phone with Campenela I asked her to please hold since I was getting an incoming call from an 800# and I wanted to make sure it wasn't the technician. It wasn't the technician, however, it was a person named Maria who said she was calling from Bob's Discount Furniture and that she was calling me to reschedule my assembly service, as the technicians had gone home for the day.

71.    On February 3, 2020, another customer complained that he had:

Ordered a couch as a … gift from Bob's. Had 6 failed delivery attempts. Then it still took a 7th visit from a technician to the house to stuff one of the back pillows that wasn't inflated. An absolute nightmare. Delivery after delivery after delivery. Their drivers dropped 2 of the couches & damaged them so they had to take those back. Another time they delivered the couch & wanted to leave the couch that they were swapping out at my house. Another time they deliver to the wrong address. Just a horrible experience & absolute waste of time between deliveries & phone calls that I had to make to these people …. This couch should be free after what I went through & all the 7 times that somebody had to be at the house waiting for these people.

72.    On February 14, 2020, yet another customer complained:

I was scheduled for a delivery on 2/13/20 between 8:15-11-15am. I received a call that the driver was at my new home at 7:48am that he was there. I explained I was near by and that they were not suppose to be there until 8:15 and I will be there by then. I arrived at 8am and the driver was gone. I was told by Bobs that should not have happened. I was then told they had set me up for redelivery that same day because of

their error. I literally waited from 8-5:24pm because Bobs
asked me not to leave the apartment and I called every 2hrs to
see where driver was. I was told they are coming after last
stop. At 5:20pm I called and was then told the driver refused to
bring my furniture back out. I went to the store immediately
and spoke to a truly wonderful manager that could do nothing
but get me a delivery date of Wednesday. I am very ill and not
having a bed is crucial to my health. I am trying my best to
rectify this with no help from Bobs. This is seriously a big
mistake in their part and I should not be the one to suffer. I …
now have to fight for some damn furniture. I never report
anything but this just is too much.[1]

73.     These complaints are just a sample of numerous complaints that, in addition

to direct customer complaints to BOB's and BOB's personal knowledge of their delivery

team practices, put BOB's on notice that its representations to PLAINTIFF upon entering

into the contract were false and/or misleading.

---

[1]In addition to the BBB, there are blogs recounting customers' complaints regarding BOB's
delivery practices, all of which BOB's was aware of or had constructive knowledge of.  *See
Corporate Headquarters Office*  (http://www.corporate-office-headquarters.com/bobs-discount-
furniture) (last visited March 9, 2020): Joann Greene ("I've ordered furniture 2 times, each time I
let them know to come after 10 am because I work.  And each time they came while I was at
work. I think it's wrong I have to go around your availability when I am paying you. If I take a
day off I won't get paid, then I can't pay you."); Kajal Patel ("We have been trying to get our new
sofa delivered for the past 2 months,….I HAVE TAKEN OFF 5 DAYS WITHOUT AND WILL
HAVE TO TAKE OFF TOMORROW AS WELL BECAUSE A DELIVERY IS SET UP TO
DELIVER A NEW SOFA BUT THEY WILL GO BACK BECAUSE A DISASSEMBLE TEAM
WAS NOT SENT TO MY HOUSE TO DISASSEMBLE MY OLD SOFA.); Engrid Bullock ("I
was told the morning hours on March 3 were filled yet I originally I was promised a delivery
time between the hours of 7:00 a.m. and 10:00 a.m. If I want those hours then I would have to
wait until March 4 for delivery. Keep in mind that I am a 74 year old working grandmother who
is also fighting a mean battle with cancer …. Bob's Discount Store is stressing me out big time.")

## PLAINTIFF'S DAMAGES

74.     BOB's conduct, acts, omissions and deception was malicious, wanton and willfully undertaken in disregard PLAINTIFF's discussed in this complaint. PLAINTIFF's damages by BOB's acts and omissions include:

     a.    Loss of substantial hourly fees and other earned income;

     b.    Loss of substantial time and incurrence of other expenses, including investigation, research, litigation and costs,

     c.    Pain and suffering and mental anguish,

     d.    Treble damages under New Jersey's Consumer Fraud Act,

     e.    Other unspecified damages, and

     f.    Attorneys fees.

### FIRST CAUSE OF ACTION
*[Negligence; All Defendants]*

75.     PLAINTIFF repeats the allegations of ¶¶ 1-74, above and incorporates them here and in all following paragraphs.

76.     BOB's and their employees promised PLAINTIFF that they would deliver furniture on a specific date within a specific window period.

77.     BOB's accepted consideration from PLAINTIFF to make that delivery.

78.     In agreeing to the above, BOB's and employees owed PLAINTIFF a duty of care, and breeched that duty.

79.    PLAINTIFF's damages as set forth in ¶ 74, above, were proximately caused by BOB's and their employees' breach of that duty.

## SECOND CAUSE OF ACTION
*[Breach of contract; All Defendants]*

80.    PLAINTIFF repeats the allegations of ¶¶ 1-79, and incorporates them here and in all following paragraphs.

81.    PLAINTIFF and BOB's entered into a contract containing terms providing BOB's would deliver furniture to PLAINTIFF on a specific date within a specific window period.

82.    PLAINTIFF duly and timely paid all required fees due under the contract and fulfilled all of his obligations.

83.    BOB's failed to perform or carry out their duties as provided for in the contract.

84.    BOB's failure and breach of the contract caused PLAINTIFF's damages as set forth in ¶ 74, above.

## THIRD CAUSE OF ACTION
*[Implied warranty of good workmanship; All Defendants]*

85.    PLAINTIFF repeats the allegations in ¶¶ 1-84 and incorporates them here and in all following paragraphs.

86.    PLAINTIFF and BOB's had a valid contract for BOB's to provide services to PLAINTIFF.

17

87.    There existed no valid exclusion or modification of the explicit and implicit promises that the services would be performed in a workmanlike manner and/or that the result would be for its intended purpose.

88.    The workmanship rendered under the contract was not performed in a workmanlike manner and/or the result was unfit for its intended purpose.

89.    PLAINTIFF suffered damages as set forth in ¶ 74, above, as a result of BOB's breach of warranty.

## FOURTH CAUSE OF ACTION
*[Common Law Fraud; All Defendants]*

90.    PLAINTIFF repeats the allegations in ¶¶ 1-89 and incorporates them here and in all following paragraphs.

91.    BOB's represented to PLAINTIFF that it would deliver furniture on a specific date within a specific window period.

92.    That representation was in fact false and known to be false by BOB's at the multiple times BOB's made it.

93.    BOB's, by making that representation, intended to and did in fact deceive PLAINTIFF.

94.    PLAINTIFF believed BOB's representations to be true and relied on those representations.

95.    PLAINTIFF suffered damages as set forth in ¶ 74, above, as a result of BOB's misconduct.

## FIFTH CAUSE OF ACTION

*[New Jersey Consumer Fraud Act; New Jersey
Admin. Code § 13:45A-5.1; All Defendants]*

96.    PLAINTIFF repeats the allegations in ¶¶ 1-95 and incorporates them here and in all following paragraphs.

97.    BOB's committed unlawful conduct by falsely representing to PLAINTIFF that his furniture would be delivered on a specific date, within a specific window period, knowing full well that the inept and negligent delivery men it used disregarded these appointments as a matter of course, and unilaterally canceled agreed upon deliveries if the customer did not accommodate the delivery teams sudden change in schedule, and thus that PLAINTIFF's furniture would not be delivered in within the agreed upon terms.

98.    PLAINTIFF relied on those representations and suffered damages as set forth in ¶ 74, above.

99.    There is a causal relationship between BOB's unlawful conduct and misrepresentations and PLAINTIFF's damages (¶ 74).

## SIXTH CAUSE OF ACTION

*[Respondeat Superior Liability; All Defendants]*

100.    PLAINTIFF repeats the allegations in ¶¶ 1-99 and incorporates them here and in all following paragraphs.

101.    BOB's exercised control over its employees who committed the acts complained of herein.

102.   BOB's had and retained the right to direct the manner in which its employees/independent contractors' business was be done, as well as the result to be accomplished, or in other words, not only what shall be done, but how it was to be done. BOB's thus had "broad control" or "on-spot control" over all of its employees.

103.   BOB's employees committed the wrongs set forth above, resulting in damage to PLAINTIFF as set forth in ¶ 74, above.  None of BOB's delivery team or the employees who committed the wrongs detailed in this complaint were independent contractors for whom BOB's is not liable.[2]

104.   BOB's is thus liable for the wrongs of their employees under the theory of *respondeat superior.*

## SEVENTH CAUSE OF ACTION
[NJ Truth-in-Consumer Contract, Warranty and Notice Act; All Defendants]

105.   PLAINTIFF repeats the allegations in ¶¶ 1-104 and incorporates them here and in all following paragraphs.

---

[2]*See e.g. Espinal v. Bob's Disc. Furniture, LLC*, 2018 WL 2278106, at *1–2 (D.N.J. May 18, 2018) ("Bob's entered into relationships with other entities, including XPO, to conceal the fact that it had an employer-employee relationship with Plaintiff.  Plaintiff contends that Bob's and XPO controlled the manner and means by which Plaintiff performed his duties, including the following: Plaintiff reported to work at the Bob's Facility for Bob's and/or XPO, took instruction from Bob's and XPO employees, ... communicated with Bob's and XPO employees while delivering [his] routes during the workday and handled paperwork related to or pertaining to Bob's and/or XPO. Plaintiff was required to wear a Bob's embroidered uniform, and Bob's and XPO had the authority to reprimand and terminate Plaintiff. In sum, Plaintiff claims that he was an employee of Bob's ... —not an independent contractor as defined by N.J.S.A. 43:21–19(i)(6)(A)(B)(C), or an exempt employee under NJWHL") (quoting BOB's delivery team civil complaint against BOB's; citations and quotation marks omitted).

106.    BOB's violated the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act by utilizing a misleading and deceptive arbitration provision as detailed above, which included a provision that PLAINTIFF would not "serve as a class representative, join as a class member, or otherwise participate as a plaintiff in any class, mass, consolidated, or private attorney general action or arbitration."

107.    As a result, PLAINTIFF suffered damages as set forth in ¶ 74, above.

**EIGHTH CAUSE OF ACTION & ABILITY TO MAINTAIN ACTION**
[Fraudulent, Invalid, Misleading, Unenforceable Arbitration Clause; All Defendants]

107a.    PLAINTIFF repeats the allegations in ¶¶ 1-107 and incorporates them here and in all following paragraphs.

108.    Unbeknownst to PLAINTIFF, buried in small print at the very end of the contract BOB's uses and the one PLAINTIFF signed with BOB's for delivery of the furniture was a purported provision for arbitration.

109.    In violation of New Jersey and federal law, the provision was on its face ambiguous, misleading, unclear, and insufficient to alert PLAINTIFF to the rights he was purportedly waiving. *See e.g.* New Jersey's Plain Language Act 56:12-2 (requiring contracts be written in "a simple, clear, understandable and easily readable way[.]")

110.    The provision was placed under the misleading heading "Resolution of Disputes" rather than one entitled Arbitration, or one that clearly altered PLAINTIFF that it pertained to arbitration.[3]

_____

[3]*Kernahan v. Home Warranty Admin. of Fla., Inc.*, 236 N.J. 301 (2019).

111.    The provision consisted of just four sentences and was set in 8-point type in violation of § 56:12-10 (b) (3) of New Jersey's Plain Language Act which required it to be set "in at least 10 point type[.]"

112.    The provision was single spaced and not set forth in bold print or in any manner to distinguish if from the rest of the contract.

113.    Moreover, unlike traditional contracts that require signatures on the last page, and only after an individual has read the entire contract, BOB's contract required customers and PLAINTIFF's signature on the second page of the contract, before the arbitration provision even appeared or was presented, and then only at the bottom of a third page of single spaced text.

114.    The provision did not clearly inform PLAINTIFF that by signing the contract he purported to be or could be giving up his right to sue BOB's.

115.    As previously stated, the provision consisted of just four sentences.

116.    The first sentence stated that it encompassed any "controversy" or "claim" arising out of, or relating to, PLAINTIFF's transaction with BOB's.

117.    However, the remaining three sentences of the provision were limited to, and only referenced, PLAINTIFF waiving his right to have his *claim* decided by a judge or jury.

118.    The provision never provided that PLAINTIFF was waiving, or agreed to waive, his right to have his "controversy" decided by a judge, jury, or court.

22

119.   Nor did the provision provide that arbitration would be the *exclusive* remedy for resolving PLAINTIFF's *controversy*.

120.   Critically, at the time PLAINTIFF executed the contract, the term "controversy" was commonly understood by PLAINTIFF and used under New Jersey law and in consumer transactions to refer to an actual lawsuit, *see e.g.* Rules Governing The Courts of the State of New Jersey Entire *Controversy* Doctrine, § 4:30 (using the term "controversy" to refer to the a particular litigation).

121.   Thus, by explicitly providing PLAINTIFF was waiving his right to have his "claim" resolved by a court or jury, but not providing the same treatment for PLAINTIFF's "controversy," the provision failed to effect a waiver of PLAINTIFF's rights concerning his "controversy," much less evidence that PLAINTIFF agreed to waive those rights.[4]  In fact, at one place the provision, using a disjunctive, actually provided that PLAINTIFF by signing agreed that he would *not* participate in arbitration. *Id.* (providing PLAINTIFF would not participate "as a plaintiff in any class, mass, consolidated, or private attorney general action *or* arbitration.")

122.   The arbitration provision was also ambiguous as it relates to PLAINTIFF's constitutional and statutory claims, such as those raised under the New Jersey Consumer Fraud Act and others in this lawsuit.

---

[4]"An ambiguity exists where the terms of a contract could suggest 'more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Abedi v. New Age Med. Clinic PA*, 2019 WL 1760845, at *4 (D.N.J. Apr. 18, 2019).

123.    The provision provided that it encompassed any controversy or claim between PLAINTIFF and BOB's "arising out of, or relating to, this agreement or any products or services purchased from Bob's[.]"

124.    This language did not inform PLAINTIFF that his constitutional and statutory claims would be waived, much less result in their waiver. *See e.g. Abedi v. New Age Med. Clinic PA*, 2019 WL 1760845, at *5 (D.N.J. Apr. 18, 2019) (provision that provided for mandatory arbitration of claims that "may arise out of or in any way relate to treatment or services provided" by doctor did not encompass plaintiff's claims based on statutory causes of action); *Moon v. Breathless Inc.*, 868 F.3d 209 (3d Cir. 2017) (same).

125.    Indeed, the provision did not contain any reference to PLAINTIFF giving up his right to trial, discovery, or a referee or mediation with respect to his "controversy," and constitutional and statutory claims.

126.    The arbitration provision is also unenforceable because it referenced the Consumer Arbitration Rules of the American Arbitration Association but failed to provide PLAINTIFF with them, explain them, or otherwise secure PLAINTIFF's assent to them. *Delaney v. Sills*, 2019 WL 3982756 (NJ Sup. Court).

127.    Specifically, the provision provided that arbitration would be administered by the American Arbitration Association "pursuant to its Consumer Arbitration Rules[.]"

128.    BOB's, however, did *not* give PLAINTIFF those rules when it presented him with the contract to sign, offered no explanation of the terms of either the contract or

that extrinsic document, some of which were material to the arbitration provision and PLAINTIFF's decision to enter into the contract.

129. BOB's never explained the nature of the costs associated with the arbitration, including that they could easily exceed thousands of dollars in cost and could be awarded against PLAINTIFF. Nor did BOB's point out that the arbitration fees and costs greatly exceed filing fees for a Superior Court action, or that under arbitration PLAINTIFF could be held liable for BOB's costs and attorneys' fees, depending on how the arbitrator ruled.

130. Had PLAINTIFF been made aware of the inequities and costs associated with proceeding with arbitration, as well as the fact that he was constitutionally entitled to have a jury decide issues related to the contract, he would have never signed the contract in the form presented by BOB's, if he signed it at all.

131. The provision is also unconscionable as it required PLAINTIFF to waive his right to bring or even participate in a class action.

132. Finally, the arbitration provision was obtained by BOB's fraud upon PLAINTIFF and is therefore unenforceable.

133. For all of the reasons discussed above, BOB's, by using this deficient arbitration provision, and at the same time failing to disclose to PLAINTIFF the material information detailed above, deceived PLAINTIFF into unknowingly signing the contract.

134. Had PLAINTIFF known of the above independently or along with BOB's
fraudulent delivery practices, he would have never signed the agreement containing the
the arbitration provision.

135. Based on the above and other reasons, PLAINTIFF may maintain this
lawsuit against BOB's.

WHEREFORE, Plaintiff respectfully requests that this Court issue judgment in his
favor in the amount of $70,000 in compensatory and punitive damages, plus attorney
fees, the costs and disbursements in this action, and such further relief as this Court
deems proper.

Dated:        West New York, New Jersey
              March 9, 2020



              JABBAR COLLINS
              *Plaintiff*
              347 Fifth Avenue
              Suite 1402
              New York, New York 10016
              Tele: (203) 823-8800
              Fax: (646) 786-3249
              Email: horizonresearchservices@gmail.com

## RULE 1:38-7(b) CERTIFICATION

I certify that the matter in controversy is not the subject of any other court action or arbitration proceeding, now pending or contemplated, and that no other parties should be joined in this action. I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

Dated:     West New York, New Jersey
         March 9, 2020

JABBAR COLLINS
*Plaintiff*
347 Fifth Avenue
Suite 1402
New York, New York 10016
Tele: (203) 823-8800
Fax: (646) 786-3249
Email: horizonresearchservices@gmail.com

HUDSON COUNTY SUPERIOR COURT
HUDSON COUNTY
583 NEWARK AVENUE
JERSEY CITY      NJ 07306

                                TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (201) 748-4400
COURT HOURS  8:30 AM - 4:30 PM

                        DATE:   MARCH 12, 2020
                        RE:     COLLINS JABBAR  VS BOB'S DISCOUNT FURNI TURE
                        DOCKET: HUD L -001062 20

     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 2.

     DISCOVERY IS   300 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

     THE PRETRIAL JUDGE ASSIGNED IS:  HON KIMBERLY ESPINALES-MALONEY

      IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      002
AT:  (201) 748-4400.

      IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
      PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                        ATTENTION:
                                JABBAR COLLINS
                                347 FIFTH AVENUE
                                SUITE 1402
                                NEW YORK        NY 10016


JUJWEL0